# United States Court of Appeals for the Federal Circuit

---

**SCHLUMBERGER TECHNOLOGY CORPORATION,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellant*

---

2015-2076

---

Appeal from the United States Court of International Trade in No. 1:11-cv-00266-TCS, Chief Judge Timothy C. Stanceu.

---

Decided: January 9, 2017

---

ALEXANDER SCHAEFER, Crowell & Moring, LLP, Washington, DC, argued for plaintiff-appellee. Also represented by JOHN BOWERS BREW, DAVID COOPER WOLFF; FRANCES PIERSON HADFIELD, New York, NY.

AIMEE LEE, Appellate Section, International Trade Litigation, United States Department of Justice, New York, NY, argued for defendant-appellant. Also represented by AMY M. RUBIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY; JEANNE E. DAVIDSON, BENJAMIN C. MIZER, Washington, DC; MICHAEL W. HEYDRICH, EDWARD N.

MAURER, Office of Assistant Chief Counsel, United States Customs and Border Protection, New York, NY.

_____

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges.*

WALLACH, *Circuit Judge.*

The instant appeal concerns the proper classification of bauxite proppants imported by Appellee Schlumberger Technology Corporation ("Schlumberger") in 2010.  U.S. Customs & Border Protection ("Customs") classified the subject merchandise under Subheading 6909.19.50 of the Harmonized Tariff Schedule of the United States ("HTSUS").[1]  Schlumberger appealed Customs's classification to the U.S. Court of International Trade ("CIT").  The CIT rejected Customs's classification and, instead, entered summary judgment that the subject merchandise should enter under HTSUS 2606.00.00.  *Schlumberger Tech. Corp. v. United States*, 91 F. Supp. 3d 1304, 1324 (Ct. Int'l Trade 2015).

Appellant, the United States ("Government"), appeals.  We possess subject matter jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).  We affirm the CIT.

BACKGROUND

The parties do not dispute the facts material to the resolution of the classification question before us.  We discuss in turn the facts relevant to the subject merchandise, Customs's classification, and the CIT's decision before turning to the merits.

_____

[1]    "All citations to the HTSUS refer to the 20[10] version, as determined by the date of importation of the merchandise." *LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011).

I. The Subject Merchandise

Schlumberger, an oil well services provider, J.A. 119, imported the subject bauxite proppants from the People's Republic of China, J.A. 1729. Schlumberger used the subject merchandise in hydraulic fracturing services that it provided to customers in the United States. J.A. 126. The subject merchandise, when combined with other materials after importation, increased oil well productivity by preventing fractures in rock formations from closing. J.A. 126, 129, 281.

The subject bauxite proppants consisted of two models: "S580-2040 Ceramic Proppant[s]" ("2040 Proppants") and "S580-4070 Ceramic Proppant[s]" ("4070 Proppants"). J.A. 119–20. "S580" referred to the designation used by Schlumberger for bauxite proppants produced by a specific third-party supplier, J.A. 125, and "2040" and "4070" referred to the "size of sieves through which the proppants can fit," J.A. 123. Each model primarily consisted of "non-metallurgical bauxite,"[2] but the precise chemical composition of the merchandise is unknown because neither party retained a sample of the merchandise. J.A. 1729; *see* J.A. 498–510. Each model measured less than a millimeter in diameter and possessed specific physical characteristics with associated values for crush resistance (i.e., strength), specific density, roundness, and sphericity. J.A. 122–23.

---

[2] "Bauxite" refers to "an impure mixture of earthy hydrous aluminum oxides and hydroxides that commonly contains similar compounds of iron and occas[ionally] of manganese . . . and is the principal source of aluminum used in commerce and industry." *Bauxite*, Webster's Third New International Dictionary of the English Language Unabridged (1986) ("Webster's"); J.A. 467 (similar).

The production of the subject merchandise involved the following steps. First, "[t]he raw materials of the subject proppants were milled or ground to a fine powder." J.A. 126. Second, the resulting powder underwent a granulation process in a pan granulator, which resulted in "larger sized particles from the milled particles." J.A. 124. Third, "the particles [were] sorted" to determine whether they met the required size specifications and, if so, the particles were dried. J.A. 124–25. Fourth, the particles that fell within the required size specifications were kiln fired. J.A. 125. Fifth, after firing, the particles were sorted anew to ensure that ninety percent of them fell within the required size specifications. J.A. 125. Finally, the particles that met the previous steps were packed in bulk in 3,200 pound bags and exported to the United States as the subject bauxite proppants. J.A. 125.

## II. Procedural History

Customs classified the subject bauxite proppants under HTSUS 6909.19.50 at a duty rate of four percent *ad valorem*. J.A. 120–21. The subheading selected by Customs covers "Ceramic wares for laboratory, chemical, or other technical uses; ceramic troughs, tubs and similar receptacles of a kind used in agriculture; ceramic pots, jars and similar articles of a kind used for the conveyance or packing of goods: Other: Other." HTSUS 6909.19.50. Schlumberger contested the classification in separate protests,[3] arguing that the subject merchandise should enter duty free under HTSUS 2606.00.0060 as "Aluminum ores and concentrates: Bauxite, calcined: Other." J.A. 109–10; *see* J.A. 162, 194. Customs denied the pro-

---

[3]    A party may protest Customs's classification of merchandise under 19 U.S.C. § 1514(a)(2) (2006). The party may appeal Customs's denial of the protest to the CIT. 28 U.S.C. § 1581(a).

tests, and Schlumberger appealed to the CIT. J.A. 107–12.

Following cross-motions for summary judgment, the CIT rejected Customs's classification and entered summary judgment that the subject bauxite proppants should enter under HTSUS 2606.00.00. *See Schlumberger*, 91 F. Supp. 3d at 1323–24. In relevant part, the CIT reasoned that the applicable interpretive rules "preclude[d]" classifying the subject merchandise under HTSUS 6909.19.50 "because the proppants are not 'ceramic wares' within the intended meaning of that term as used in [H]eading 6909." *Id.* at 1323. The CIT also found that the Government's "alternate classification" under Subheading 6914.90.80 "is incorrect because [H]eading 6914 . . . is confined to 'ceramic articles' rather than substances such as the proppants at issue." *Id.* at 1323−24; *see* HTSUS 6914.90.80 (covering "Other ceramic articles: Other: Other"). Having found these provisions inapplicable, the CIT concluded that the subject merchandise should enter under HTSUS 2606.00.00 based on Heading 2606's terms, guidance provided in the notes accompanying HTSUS Chapter 26 and in other sources, and the undisputed material facts. *See Schlumberger*, 91 F. Supp. 3d at 1316–22.

## DISCUSSION

### I. Standard of Review

We review de novo the CIT's decision to grant summary judgment and apply anew the standard used by the CIT to assess the subject Customs classification. *See Otter Prods., LLC v. United States*, 834 F.3d 1369, 1374–75 (Fed. Cir. 2016). "Although we review the decision[] of the CIT de novo, we give great weight to the informed opinion of the CIT . . . and it is nearly always the starting point of our analysis." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016) (internal quotation marks, brackets, and citation omitted). The

CIT "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. CIT R. 56(a) (2015).

The classification of merchandise involves a two-step inquiry. *See LeMans*, 660 F.3d at 1315. We first ascertain the meaning of the terms within the relevant tariff provision and then determine whether the subject merchandise fits within those terms. *See Sigma-Tau HealthSci., Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). The first step presents a question of law that we review de novo, whereas the second involves an issue of fact that we review for clear error. *Id.* When, as here, no genuine dispute exists as to the nature of the subject merchandise, the two-step inquiry "collapses into a question of law [that] we review de novo." *LeMans*, 660 F.3d at 1315 (citation omitted).

## II. The CIT Properly Classified the Subject Merchandise

The Government contests the CIT's decision to classify the subject bauxite proppants under HTSUS 2606.00.00, arguing that the merchandise instead falls within the terms of HTSUS 6909.19.50 or, alternatively, HTSUS 6914.90.80. *See* Appellant's Br. 17–35. The Government also contends that the subject merchandise does not meet the terms of HTSUS 2606.00.00. *Id.* at 35–43. After discussing the applicable legal framework, we address these arguments in turn.

### A. Legal Framework

The HTSUS governs the classification of merchandise imported into the United States. *See Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). The HTSUS "shall be considered to be statutory provisions of law for all purposes." 19 U.S.C. § 3004(c)(1).

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category."[4] *Wilton Indus.*, 741 F.3d at 1266. "[T]he headings and subheadings . . . are enumerated in chapters 1 through 99 of the HTSUS (each of which has its own section and chapter notes) . . . ." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014) (footnote and citation omitted). The HTSUS "also contains the 'General Notes,' the 'General Rules of Interpretation' ('GRI'), the 'Additional [U.S.] Rules of Interpretation' ('ARI'),[5] and various appendices for particular categories of goods." *Id.* (footnote and citation omitted).

The GRI and the ARI govern the classification of goods within the HTSUS. *See Otter Prods.*, 834 F.3d at 1375. The GRI apply in numerical order, meaning that subsequent rules are inapplicable if a preceding rule provides proper classification. *See Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). GRI 1 provides, in relevant part, that "classification shall be determined according to the terms of the [HTSUS] *headings* and any relative section or chapter notes . . . ." GRI 1 (emphasis added). Under GRI 1, "a court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Orlando Food*

---

[4]    The first four digits of an HTSUS provision constitute the heading, whereas the remaining digits reflect subheadings.

[5]    The ARI contain specific rules for use and textile provisions in the HTSUS. *See* ARI 1(a)–(d). Because the appeal involves *eo nomine* provisions, we find the ARI inapplicable. *See infra* Section II.B.

*Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). "[T]he possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *R.T. Foods*, 757 F.3d at 1353 (citations omitted). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citation omitted). "To discern the common meaning of a tariff term, we may consult dictionaries, scientific authorities, and other reliable information sources." *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (citation omitted).

"After consulting the headings and relevant section or chapter notes" consistent with GRI 1, we may consider the Explanatory Notes ("EN") attendant to the relevant HTSUS headings.[6] *Fuji Am. Corp. v. United States*, 519 F.3d 1355, 1357 (Fed. Cir. 2008) (citation omitted). The EN provide persuasive guidance and "are generally indicative of the proper interpretation," though they do not constitute binding authority. *Kahrs*, 713 F.3d at 645 (citations omitted).

### B. The Subject Merchandise Does Not Fall Within the Terms of Heading 6909 or 6914

According to the Government, the subject merchandise constitutes "ceramic wares" under Heading 6909 or,

---

[6]   The World Customs Organization publishes the EN as its "official interpretation of the Harmonized Commodity Description and Coding System," the "global system of trade nomenclature on which the HTSUS is based." *Kahrs*, 713 F.3d at 644 n.2; *Michael Simon Design, Inc. v. United States*, 33 Ct. Int'l Trade 1003, 1004–05 (2009) (discussing the HTSUS's historical backdrop).

alternatively, "other ceramic articles" under Heading 6914. *See* Appellant's Br. 21–35. The CIT disagreed. *See Schlumberger*, 91 F. Supp. 3d at 1310–16. We agree with the CIT.

We first must assess whether the subject Headings constitute *eo nomine* or use provisions because different rules and analysis will apply depending upon the heading type. *Compare Kahrs*, 713 F.3d at 645–46 (*eo nomine* analysis), *with Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312−16 (Fed. Cir. 2012) (principal use analysis). An *eo nomine* provision "describes an article by a specific name," whereas a use provision describes articles according to their principal or actual use. *Aromont*, 671 F.3d at 1312 (citation omitted); *see id.* at 1313. Heading 6909 covers "Ceramic wares for laboratory, chemical, or other technical uses; ceramic troughs, tubs and similar receptacles of a kind used in agriculture; ceramic pots, jars and similar articles of a kind used for the conveyance or packing of goods." Although Heading 6909 recites the use of ceramic products for certain purposes, the operative question here asks whether the subject merchandise constitutes a "ceramic ware" under the Heading's terms. As a result, we treat the Heading as *eo nomine*. *See Sigma-Tau*, 838 F.3d at 1278 (treating an HTSUS provision as *eo nomine*, despite the provision disclosing certain uses, when the interpretation centered on the terms describing an article by a specific name). Heading 6914, which recites "Other ceramic articles," is unquestionably *eo nomine* because it describes the articles it covers by name. *See Aromont*, 671 F.3d at 1312. Because the subject Headings are *eo nomine*, our analysis starts with their terms. *See R.T. Foods*, 757 F.3d at 1354.

Neither the HTSUS nor the applicable legislative history defines "ceramic wares" under Heading 6909 or "other ceramic articles" under Heading 6914. However, the notes accompanying HTSUS Chapter 69 inform our construction of the subject Headings. Note 1 to HTSUS

Chapter 69 explains that the Chapter's provisions, including Heading 6909 and Heading 6914, "appl[y] only to ceramic products which have been fired after shaping." HTSUS 69, Note 1. The Note does not define "shaping," so we look to the dictionary to understand its common meaning. *See Sigma-Tau*, 838 F.3d at 1279. The infinitive form of the verb "shape" means "to give a *particular* or proper form to by or as if by molding or modeling from an undifferentiated mass" or "to give *definite* or finished shape to . . . ." *Shape*, Webster's (emphases added).[7]

The Government contends that the granulation process provides the requisite shape to the subject merchandise. Appellant's Br. 23−25. The undisputed facts show that it does not. As the CIT observed,

> [w]hen the granules emerge from th[e] granulation process, they range so substantially in size that sieving is necessary to eliminate granules that do not fall within the desired size range. Even after the proppants are sieved so that 90% of the proppants fall within the desired size range, each of the two ranges characterizing the subject merchandise still permits 100% variation in size.

*Schlumberger*, 91 F. Supp. 3d at 1313 (citing J.A. 123–25) (internal citations omitted). The Government does not contest the CIT's observations. *See generally* Appellant's Br. Indeed, an industry authority submitted by the Government corroborates the CIT's observations. J.A. 480 (listing "Granulation" as a step that occurs prior

---

[7] The EN to Chapter 69 provide substantively similar guidance, explaining in relevant part that "[t]he manufacturing process of the ceramic products" classifiable under Chapter 69 include a "[s]haping" step whereby the material "is . . . shaped *as nearly as possible* to the desired form." EN 69, General (emphasis added).

to "Forming"). Thus, because the subject merchandise's size varied to such a significant degree after the granulation process, the undisputed facts counsel against finding that the merchandise possessed the requisite definite shape following the granulation process. Possessing *some* shape does not equate to the *definite* shape required to enter under HTSUS Chapter 69, and a "desired form" cannot be any form at all since it would be impossible to shape something "as nearly as possible" to an indefinite standard.

The principle of *noscitur a sociis* confirms our conclusion that the subject bauxite proppants do not fall within the terms of either Heading 6909 or Heading 6914. That principle teaches "a word is known by the company it keeps," which "avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (internal quotation marks and citation omitted); *Bilski v. Kappos*, 561 U.S. 593, 604 (2010) ("[A]n ambiguous term may be given more precise content by the neighboring words with which it is associated." (internal quotation marks and citation omitted)); *see also Jewelpak Corp. v. United States*, 297 F.3d 1326, 1331, 1337 (Fed. Cir. 2002) (affirming the use of *noscitur a sociis* to interpret an HTSUS provision).[8] Heading 6909 covers "Ceramic wares for laboratory, chemical, or other technical

---

[8]    A canon related to *noscitur a sociis*, *ejusdem generis*, instructs that "where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to those specifically enumerated." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980). We also have relied upon the principle of *ejusdem generis* when interpreting HTSUS provisions. *See, e.g., Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1107 (Fed. Cir. 2014).

uses; ceramic troughs, tubs and similar receptacles of a kind used in agriculture; ceramic pots, jars and similar articles of a kind used for the conveyance or packing of goods." The EN provide that Heading 6909 "covers a range of very varied articles," such as "crucibles and crucible lids," "mortars and pestles," "beakers," "containers with single or double walls," "[c]ontainers of the kinds used for the commercial transport or packing of goods," and "[t]roughs, tubs and similar containers of the type used in agriculture." EN 69.09. The listed "wares" and "articles" concern individual products with definite forms. *See id.*; *see also* EN 69, General (requiring products imported under HTSUS Chapter 69 to be "shaped as nearly as possible to the desired form"). As explained above, the subject merchandise does not possess a definite form. J.A. 125–26. Because the subject merchandise does not have a definite form, it cannot fall within that Heading's terms. *See Yates*, 135 S. Ct. at 1085.

The inclusion of "grinding apparatus and balls, etc., for grinding mills" in the EN accompanying Heading 6909 does not require a different conclusion. *But see* Appellant's Br. 30–31. The Government has not provided any evidence demonstrating that the subject bauxite proppants and "grinding apparatus and balls" vary in shape to a similar degree, such that the subject proppants similarly should fall within Heading 6909. The Government's speculation cannot prevent the entry of summary judgment against it. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) (finding entry of summary judgment appropriate because of "the absence of any significant probative evidence" in support of a claim).

Finally, an examination of the EN accompanying Heading 6914 yields the conclusion that the subject bauxite proppants do not fall within that Heading's terms. Heading 6914 covers "Other ceramic articles." The EN explain that Heading 6914 covers, inter alia, "[s]toves and other heating apparatus," "non-decorative flower pots,"

"fittings for doors, windows, etc.," "[l]etters, numbers, sign-plates and similar motifs for shop signs and shop windows," ceramic "[s]pring lever stoppers," "jars and containers for laboratories," and "other articles such as knife handles, school inkwells, humidifiers for radiators[,] and bird cage accessories." EN 69.14. The listed examples concern individual products shaped into definite forms. *See id.*; *see also* EN 69, General (requiring products imported under HTSUS Chapter 69 to be "shaped as nearly as possible to the desired form"). Unlike the examples provided in the EN, the subject proppants are bulk substances that lack a definite form. J.A. 125–26. Because the subject proppants do not possess the requisite definite form like the products listed in Heading 6914, they cannot fall within that Heading's terms. *See Yates*, 135 S. Ct. at 1085.

## C. The Subject Merchandise Falls Within the Terms of Heading 2606

Having found the subject bauxite proppants outside the terms of Heading 6909 and Heading 6914, we next examine Heading 2606. The Government argues that the CIT erred by finding the subject merchandise classifiable under that Heading. Appellant's Br. 35–43. We disagree.

Heading 2606 covers "Aluminum ores and concentrates." The provision is *eo nomine* because it describes the merchandise it covers by name. *See Aromont*, 671 F.3d at 1312. Neither the HTSUS nor the applicable legislative history defines "aluminum ore" under Heading 2606. The notes accompanying HTSUS Chapter 26 inform our construction of the subject Heading, providing two criteria. First, Note 2 to HTSUS Chapter 26 explains that "the term 'ores' means minerals of mineralogical species actually used in the metallurgical industry for the extraction of" certain metals, "even if they are intended for nonmetallurgical purposes." HTSUS 26, Note 2. Second, the Note states that HTSUS 2606 does not "in-

clude minerals which have been submitted to processes not normal to the metallurgical industry." *Id.*

The subject bauxite proppants meet each criterion. With respect to the first, the subject merchandise contains a mineral of a mineralogical species used in the metallurgical industry for the extraction of a particular metal. EN 26.06 provides that Heading 2606 "covers bauxite (hydrated aluminum oxide containing variable proportions of iron oxide, silica, etc.)." The parties agree that "[t]he subject proppants are produced from non-metallurgical grade bauxite," meaning that the subject proppants contain the requisite mineral of a mineralogical species. J.A. 1729. Moreover, the undisputed facts demonstrate that the industry uses bauxite in the extraction of aluminum. J.A. 121 ("Metallurgical grade bauxite is used in the metallurgical industry for the extraction of aluminum."), 1729 (discussing the "commercial extraction of aluminum metal from bauxite").

The Government counters that the subject merchandise cannot meet the first criterion because Schlumberger used the subject merchandise "only for hydraulic fracturing" and not the extraction of a particular metal. Appellant's Br. 37. However, the Government overlooks a relevant passage of Note 2 to HTSUS Chapter 26, which explains that the Chapter covers ores "even if they are intended for non-metallurgical purposes," so long as the industry uses the ores for the extraction of metal. HTSUS 26, Note 2. As stated above, it is undisputed that the industry uses bauxite to extract aluminum. J.A. 121, 1729.

Because the subject bauxite proppants satisfy the first criterion articulated in Note 2 to HTSUS Chapter 26, we turn to the second to determine whether the subject merchandise underwent processes not normal to the metallurgical industry. Neither the HTSUS nor the applicable section and chapter notes provide guidance as

to what constitutes a "normal" process in the metallurgical industry. However, the EN to Chapter 26 state that aluminum ore classifiable under Heading 2606 may undergo, inter alia, "crushing," "grinding," "screening," "agglomeration of powders . . . into grains, balls or briquettes," and "drying." EN 26, General. As stated above, the subject bauxite proppants underwent these very steps during the production process. J.A. 124–25. Thus, the CIT properly concluded that these processes "must be considered normal to the metallurgical industry and not the sort of processing that would cause exclusion from [C]hapter 26 by operation of [N]ote 2 to [C]hapter 26, HTSUS." *Schlumberger*, 91 F. Supp. 3d at 1318.

The Government contends that the CIT improperly found the processes normal to the metallurgical industry despite the fact that the processes were "not for the purpose of preparing the proppants for the extraction of metal." Appellant's Br. 42. Note 2 to HTSUS Chapter 26 provides only that the minerals may not be submitted to processes other than those normal to the metallurgical industry; it does not require that any processing be undertaken "for the purpose" of extracting metal. HTSUS 26, Note 2. Indeed, the Note expressly contemplates that a product imported under the Chapter can be "intended for non-metallurgical purposes." *Id.*

The Government contends further that dopants were added to the bauxite powder during the proppant manufacturing process and that the addition of dopants is not normal to the metallurgical industry.[9] Appellant's Br. 37–40. As a result, the Government contends that the

---

[9] The noun "dopant" means "an impurity added usually in minute amounts to a pure substance to alter its properties." J.A. 79. The identity of the dopants remains proprietary. *Schlumberger*, 91 F. Supp. 3d at 1318 n.18.

subject merchandise cannot meet the second element in Note 2 of HTSUS Chapter 26. *See id.*

The addition of dopants to the bauxite powder does not necessitate a different conclusion. The EN to Chapter 26 explain that a process may remain normal to the industry so long as it does "not alter the chemical composition of the basic compound which furnishes the desired metal." EN 26, General. The Government has not offered any evidence demonstrating the extent to which the dopants changed the chemical composition of the bauxite powder; indeed, the Government was unable to state that the dopants' underlying chemicals at the exact levels found in the subject merchandise would not themselves exist naturally in bauxite ore. Oral Argument at 12:07–14:24, http://oralarguments.cafc.uscourts.gov/default.aspx ?fl=2015-2076.mp3. Thus, the Government did not demonstrate that the basic bauxite compound changed from consisting primarily of aluminum oxide so as to offend EN 26, and its speculation may not foreclose the entry of summary judgment. *See First Nat'l Bank of Ariz.*, 391 U.S. at 290.

Finally, the Government avers that the subject bauxite proppants do not fall within Heading 2606 because they are "finished manufactured products immediately usable upon importation" and "not a 'material' or naturally occurring 'substance.'" Appellant's Br. 35. According to the Government, Heading 2606 is limited to "primary materials which will be further processed after importation." *Id.* at 1; *see also id.* at 17 (arguing that the CIT failed to consider the subject merchandise in its "condition as imported" (capitalization omitted)).

The terms of Heading 2606 do not support the Government's argument. Under GRI 1, we must look to "the terms of the [HTSUS] headings and any relative section or chapter notes." As the CIT observed, "[n]othing in the terms of the heading, the section or chapter notes, or the

relevant [EN] supports a conclusion that a product ready for the intended use in the condition as imported is outside the scope of the heading." *Schlumberger*, 91 F. Supp. 3d at 1320. That conclusion comports with the principle that "an *eo nomine* provision" like Heading 2606 "includes all forms of the named article." *Kahrs*, 713 F.3d at 646 (citation omitted). Thus, we decline the Government's invitation to imbue Heading 2606 with a meaning not supported by the Heading's text or the accompanying section and chapter notes.

## CONCLUSION

We have considered the Government's remaining arguments and find them unpersuasive. Accordingly, the final judgment of the U.S. Court of International Trade is

## **AFFIRMED**