# United States Court of Appeals for the Federal Circuit

———————————

**WELL LUCK COMPANY, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2017-1816

———————————

Appeal from the United States Court of International Trade in No. 1:13-cv-00064-CRK, Judge Claire R. Kelly.

———————————

Decided: April 11, 2018

———————————

LUIS FERNANDO ARANDIA, JR., and ROBERT T. GIVENS, Givens & Johnston, PLLC, Houston, TX, argued for plaintiff-appellant.

ALEXANDER J. VANDERWEIDE, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by CHAD A. READLER, JEANNE E. DAVIDSON, AMY M. RUBIN; SHERYL FRENCH, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

———————————

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

This appeal concerns the proper classification of certain in-shell sunflower seeds for snacking imported by Appellant Well Luck Company, Inc. ("Well Luck"). U.S. Customs and Border Protection ("Customs") classified the subject merchandise under Harmonized Tariff Schedule of the United States ("HTSUS") Subheading 2008.19.90.[1] Before the U.S. Court of International Trade ("CIT"), Well Luck and Appellee United States ("the Government") filed cross-motions for summary judgment, with Well Luck challenging Customs' classification and arguing that Customs should have classified the subject merchandise under HTSUS Subheading 1206.00.00. The CIT denied Well Luck's Cross-Motion and, instead, granted the United States' Cross-Motion, determining that Customs properly classified the subject merchandise under HTSUS Subheading 2008.19.90. *See Well Luck Co. v. United States*, 208 F. Supp. 3d 1364, 1367 (Ct. Int'l Trade 2017); *see also* J.A. 22 (Judgment).

Well Luck appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012). We affirm.

BACKGROUND

The subject merchandise "consists of three varieties of wet-cooked and/or roasted, salted, flavored, and/or unflavored sunflower seeds in unbroken shells: All Natural Flavor, Spiced Flavor, and Coconut Flavor." *Well Luck*,

---

[1] "All citations to the HTSUS refer to the 20[10] version, as determined by the date of importation of the merchandise." *LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011); *see* J.A. 30 (providing that the subject merchandise was entered on April 9, 2010).

208 F. Supp. 3d at 1367 (internal quotation marks and citations omitted).[2]  The sunflower seeds in each flavor "are of the common sunflower, *Helianthus annuus*, and the seeds used by [Well Luck] are used, as is, for human consumption and not for the extraction of edible or industrial oils or fats."  *Id.* at 1368 (citations omitted).  After initial processing and selection "for quality, size, and purity," the sunflower seeds "are then further processed by being heated in an oven to 302 degrees Fahrenheit . . . for approximately [sixty-five] minutes," and "[s]alt is added to the seeds during this heating process." *Id.* (citations omitted).  Finally, the sunflower seeds "are then cooled, and those in unbroken shells are packaged into finished product bags sold for consumption and [then] imported."  *Id.* (citations omitted).  The subject merchandise "is not fungible or interchangeable with" any of the following:  (1) "raw sunflower seeds"; (2) sunflower seeds that "only undergo heat treatment" to preserve them, "to inactivate antinutritional factors," or "to facilitate their use"; or (3) sunflower seeds that "are not roasted, salted[,] and flavored."  *Id.* (internal quotation marks and citations omitted).

Customs classified the subject merchandise under HTSUS Subheading 2008.19.90 at a duty rate of 17.9% *ad valorem*.  *Id.* at 1367.  HTSUS Subheading 2008.19.90 covers "[f]ruit, nuts and other edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included:  [n]uts, peanuts (groundnuts) and other seeds, whether or not mixed together: [o]ther, including mixtures:  [o]ther." Well Luck contested the classification by filing a protest, arguing that the

---

[2]  The parties do not dispute the material facts.  Accordingly, we cite to the facts as recited by the CIT.  *See Well Luck*, 208 F. Supp. 3d at 1367–68.

subject merchandise should enter at a duty-free rate under HTSUS Subheading 1206.00.00, which covers "[s]unflower seeds, whether or not broken." *See* J.A. 30, 34; *see also Well Luck*, 208 F. Supp. 3d at 1367. Customs denied Well Luck's protest, and the CIT upheld Customs' classification. *See Well Luck*, 208 F. Supp. 3d at 1367, 1377; *see also* J.A. 28–41 (Complaint).

The CIT determined that HTSUS Subheading 1206.00.00 covers "seeds of the common sunflower plant, *Helianthus annuus*, that are not processed in a way that renders them unsuitable for extraction of edible or industrial oils and fats, sowing, and other purposes," *Well Luck*, 208 F. Supp. 3d at 1372, whereas HTSUS Subheading 2008.19.90 "covers parts of plants made ready or suitable in advance for eating, such as by dry-roasting or fat roasting, whether or not containing or coated with vegetable oil, salt, flavors, spices or other additives, and made fit for future use in a manner to prevent spoilage," *id.* at 1375. Applying these interpretations to the subject merchandise, the CIT held that Well Luck's "sunflower seeds are not classified in [HTSUS S]ubheading 1206.00.00 . . . because it is undisputed that they are not suitable for general use," *id.*, but rather "are prepared or preserved not elsewhere specified or included within the meaning of [HTSUS S]ubheading 2008.19.90," *id.* at 1377.

## DISCUSSION

### I. Standard of Review

We review de novo the CIT's decision to grant summary judgment, applying the same standard used by the CIT to assess Customs' classification. *See Otter Prods., LLC v. United States*, 834 F.3d 1369, 1374–75 (Fed. Cir. 2016). "Although we review the decision of the CIT de novo, we give great weight to the informed opinion of the CIT and it is nearly always the starting point of our analysis." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (internal quotation

marks, alterations, and citation omitted). The CIT "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a).

The classification of merchandise involves a two-step inquiry. *See LeMans*, 660 F.3d at 1315. First, we ascertain the meaning of the terms within the relevant tariff provision and, second, we determine whether the subject merchandise fits within those terms. *See Sigma-Tau HealthSci., Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). The first step presents a question of law that we review de novo, whereas the second involves a question of fact that we review for clear error. *Id.* When, as here, no genuine dispute exists as to the nature of the subject merchandise, the two-step inquiry "collapses into a question of law [that] we review de novo." *LeMans*, 660 F.3d at 1315 (citation omitted).

## II. The CIT Properly Granted Summary Judgment for the Government

### A. Legal Framework

The HTSUS governs the classification of merchandise imported into the United States. *See Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). The HTSUS "shall be considered . . . statutory provisions of law for all purposes." 19 U.S.C. § 3004(c)(1) (2012).[3]

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the

---

[3] However, "the tenth-digit statistical suffixes . . . are not statutory." *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1026 (Fed. Cir. 2017).

goods within each category." *Wilton Indus.*, 741 F.3d at 1266. "The first four digits of an HTSUS provision constitute the heading, whereas the remaining digits reflect subheadings." *Schlumberger*, 845 F.3d at 1163 n.4. "[T]he headings and subheadings . . . are enumerated in chapters 1 through 99 of the HTSUS (each of which has its own section and chapter notes) . . . ." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014). The HTSUS "also contains the 'General Notes,' the 'General Rules of Interpretation' ('GRI'), the 'Additional [U.S.] Rules of Interpretation' ('ARI'),[4] and various appendices for particular categories of goods." *Id.* (footnote omitted).

The GRI and the ARI govern the classification of goods within the HTSUS. *See Otter Prods.*, 834 F.3d at 1375. "The GRI apply in numerical order, meaning that subsequent rules are inapplicable if a preceding rule provides proper classification." *Schlumberger*, 845 F.3d at 1163. GRI 1 provides, in relevant part, that "classification shall be determined according to the terms of the *headings* and any relative section or chapter notes." GRI 1 (emphasis added). "Under GRI 1, a court first construes the language of the heading, and any section or

---

[4] The ARI contain specific rules for use and textile provisions in the HTSUS. *See* ARI 1(a)–(d). "Because th[is] appeal involves *eo nomine* provisions," as discussed below, "we find the ARI inapplicable." *Schlumberger*, 845 F.3d at 1163 n.5; *see infra* Section II.B. "An *eo nomine* classification provision is one which describes a commodity by a specific name," rather than by use, *Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1467 (Fed. Cir. 1998), and "[a]bsent limitation or contrary legislative intent, an *eo nomine* provision includes all forms of the named article, even improved forms," *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364–65 (Fed. Cir. 2011) (internal quotation marks and brackets omitted).

chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Schlumberger*, 845 F.3d at 1163 (internal quotation marks and citation omitted). "[T]he possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *R.T. Foods*, 757 F.3d at 1353 (citations omitted). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). "To discern the common meaning of a tariff term, we may consult dictionaries, scientific authorities, and other reliable information sources." *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (citation omitted).

"After consulting the headings and relevant section or chapter notes" consistent with GRI 1, we may consider the relevant Explanatory Notes ("EN"). *Fuji Am. Corp. v. United States*, 519 F.3d 1355, 1357 (Fed. Cir. 2008).[5] "The [ENs] provide persuasive guidance and are generally indicative of the proper interpretation, though they do not constitute binding authority." *Chemtall*, 878 F.3d at 1019 (internal quotation marks and citation omitted).

When, as here, "merchandise is prima facie classifiable under two or more headings or subheadings of the HTSUS" and GRI 2 does not apply, "we apply GRI 3 to resolve the classification." *LeMans*, 660 F.3d at 1316 (citation and italics omitted); *see* GRI 2(a) (applying to

---

[5]   "The World Customs Organization publishes the EN[s] as its official interpretation of the Harmonized Commodity Description and Coding System, the global system of trade nomenclature on which the HTSUS is based." *Schlumberger*, 845 F.3d at 1163 n.6 (internal quotation marks and citations omitted).

"article[s] incomplete or unfinished" and "article[s] complete or finished . . . , presented unassembled or disassembled"); GRI 2(b) (applying to "mixtures or combinations of . . . material[s] or substance[s]" and providing that "[t]he classification of goods consisting of more than one material or substance shall be according to the principles of [GRI 3]"); GRI 3 (providing for classification "[w]hen, by application of [GRI] 2(b) or *for any other reason*, goods are, prima facie, classifiable under two or more headings" (emphasis added) (italics omitted)).  GRI 3(a) provides that "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description."  GRI 3(a).

Once the court determines the appropriate heading, the court applies GRI 6 to determine the appropriate subheading.  *See* GRI 6; *see also Orlando Food Corp. v. United States*, 140 F.3d 1437, 1442 (Fed. Cir. 1998) (relying on GRI 6 when turning to the subheadings).  GRI 6 provides that "the classification of goods in the *subheadings* of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above [GRIs], on the understanding that only subheadings at the same level are comparable."  GRI 6 (first emphasis added).

## B. The Subject Merchandise Falls Within the Terms of HTSUS Headings 1206 and 2008

### 1. HTSUS Heading 1206

According to Well Luck, the subject merchandise "are prima facie classifiable as 'sunflower seeds'" under HTSUS Heading 1206 because it "contains an unambiguous and unlimited *eo nomine* tariff provision" and "lexicographic authorities and published industry sources support a broad common and commercial meaning of 'sunflower seeds' that includes snacking seeds."  Appellant's Br. 12 (italics omitted); *see id.* at 12–25.  The Government responds that, inter alia, "Well Luck has failed

to establish that the common and commercial meaning of the tariff term 'sunflower seeds' includes" the subject merchandise. Appellee's Br. 17; *see id.* at 14–17. We conclude that the subject merchandise is prima facie classifiable under HTSUS Heading 1206.

"We first must assess whether the subject [h]eading[] constitute[s an] *eo nomine* or use provision[] because different rules and analysis will apply depending upon the heading type." *Schlumberger*, 845 F.3d at 1164 (first citing *Kahrs*, 713 F.3d at 645–46 (*eo nomine* analysis); then citing *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312–16 (Fed. Cir. 2012) (principal use analysis)). HTSUS Heading 1206, which recites "[s]unflower seeds, whether or not broken," "is unquestionably *eo nomine* because it describes the articles it covers by name," and, thus, "our analysis starts with [its] terms." *Schlumberger*, 845 F.3d at 1164.

Neither the HTSUS, nor legislative history, nor Chapter Notes inform our construction of "sunflower seeds" as used in HTSUS Heading 1206. Therefore, "we look to the dictionary to understand its common meaning." *Id.* The common meaning of "sunflower seed" is "the hard-shelled edible seed of a plant of the daisy family, yielding an oil used in cooking and margarine." *Sunflower Seed*, New Oxford American Dictionary (3d ed. 2010); *see Sunflower Seed*, Oxford English Dictionary (3d ed. 2018) (defining "sunflower seed" as "any of the edible, oil-rich grey seeds of a sunflower; the fruit (an achene with a thin, hard shell) containing such a seed; (as a mass noun) such seeds or fruits collectively"), *available at* http://www.oed.com/view/Entry/194102; *see also Sunflower*, The American Heritage Dictionary of the English Language (5th ed. 2011) (defining "sunflower" as, inter alia, "[a]ny of several plants of the genus *Helianthus . . .* , especially *H. annuus, . . .* that produce *edible seeds rich in oil*" (emphasis added)); *Sunflower*, Webster's New World College Dictionary (4th ed. 2009) (defining "sunflower" as "any of a

genus (*Helianthus*) of tall plants of the composite family, having large, yellow, daisylike flowers . . . containing *edible seeds that yield an oil*" (emphasis added)). The common meaning of "sunflower seeds" as used in HTSUS Heading 1206 thus is unambiguously "edible, oil-rich seeds of a sunflower,"[6] and there is no reasonable dispute that this broad definition covers the subject merchandise. *See Well Luck*, 208 F. Supp. 3d at 1368 (stating as an uncontroverted fact that "[t]he sunflower seeds in all varieties of [Well Luck]'s imported merchandise are of the common sunflower, *Helianthus annuus*, and the seeds used by [Well Luck] are used, as is, for human consumption" (citations omitted)).

Having considered the Heading, legislative history, and Chapter Notes consistent with GRI 1, we may turn to the relevant ENs. *Fuji*, 519 F.3d at 1357. As the CIT explained, *see Well Luck*, 208 F. Supp. 3d at 1371–72, the General EN to Chapter 12 provides a narrowed definition for seeds, stating that Headings 1201–07 cover: (1) "seeds . . . used for the extraction . . . of edible or

---

[6]   This definition is consistent with the definition at the time of the HTSUS's enactment. *See Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1291 n.2 (Fed. Cir. 2008). Moreover, in accordance with our precedent, *see Carl Zeiss*, 195 F.3d at 1379 (providing that the "common and commercial meanings [of an HTSUS term] . . . are presumed to be the same" and that "[o]ne who argues that a tariff term should not be given its common or dictionary meaning must prove that it has a different commercial meaning that is definite, uniform, and general throughout the trade"), this definition is consistent with the commercial meaning reflected in the industry dictionaries proffered by Well Luck, *see* Appellant's Br. 19–20, and surveyed by the CIT, *see Well Luck*, 208 F. Supp. 3d at 1370 & nn.6–7.

industrial oils and fats" but not seeds "primarily used for other purposes"; and (2) seeds that "have undergone heat treatment" but "only if [the heat treatment] does not alter the character of the seeds . . . as natural products" and "does not make them suitable for a specific use rather than for general use." EN 12, General. However, by relying on the "narrower interpretation" provided by the EN to determine that HTSUS Heading 1206 does not cover the subject merchandise, *Well Luck*, 208 F. Supp. 3d at 1373; *see id.* (stating that "[n]othing in the language of the HTSUS heading itself clarifies whether this broad definition or a narrower definition applies" and adopting the "narrower interpretation" provided by the EN), the CIT ran afoul of our instruction that a court "shall not employ [the ENs'] limiting characteristics, to the extent there are any, to narrow the language of the classification heading itself." *Sigma-Tau*, 838 F.3d at 1281 (quoting *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003)); *cf. Archer Daniels Midland Co. v. United States*, 561 F.3d 1308, 1315 (Fed. Cir. 2009) (declining to afford ENs "any weight" when inconsistent with a tariff provision's plain meaning (internal quotation marks and citation omitted)). We decline to repeat the CIT's error here. Therefore, we conclude that the subject merchandise is prima facie classifiable under HTSUS Heading 1206.

## 2. HTSUS Heading 2008

Well Luck contends that, because the subject merchandise is prima facie classifiable under HTSUS Heading 1206, our inquiry ends. *See* Appellant's Br. 37 (stating that "Well Luck's snacking sunflower seeds are properly classifiable as 'sunflower seeds' under [HTSUS] Heading 1206" and, thus, "[u]nder conventional tariff classification analysis, nothing more is required"). However, imports may be prima facie classifiable under multiple HTSUS headings. *See* GRI 3 (governing situations where "goods are, prima facie, classifiable under two or

more headings" (italics omitted)); *see also LeMans*, 660 F.3d at 1316 ("When merchandise is prima facie classifiable under two or more headings or subheadings of the HTSUS, we apply GRI 3 to resolve the classification." (citation and italics omitted)). We hold that the subject merchandise also is prima facie classifiable under HTSUS Heading 2008.

HTSUS Heading 2008 covers "[f]ruit, nuts and other edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included: [n]uts, peanuts (ground-nuts) and other seeds, whether or not mixed together." It is "*eo nomine* because it describes the articles it covers by name," and, thus, "our analysis starts with [its] terms." *Schlumberger*, 845 F.3d at 1164.

Neither the HTSUS, nor legislative history, nor Chapter Notes inform our construction of HTSUS Heading 2008. Therefore, "we look to the dictionary to understand its common meaning." *Id.* Because there is no dispute that the subject merchandise is "seeds" under HTSUS Heading 2008, *see Well Luck*, 208 F. Supp. 3d at 1368 (citations omitted), we must determine the common meaning of "edible" and "prepared or preserved." First, "edible" means "fit to be eaten." *Edible*, Webster's New World College Dictionary (4th ed. 2009); *see Edible*, The American Heritage Dictionary of the English Language (5th ed. 2011) (defining "edible" as "[f]it to be eaten, especially by humans"); *Edible*, New Oxford American Dictionary (3d ed. 2010) (defining "edible" as "fit to be eaten (often used to contrast with unpalatable or poisonous examples)"). Second, the definition of "prepared" includes "to be made ready." *See Prepare*, The American Heritage Dictionary (5th ed. 2011) (defining "prepare" to mean, inter alia, "[t]o make ready beforehand for a specific purpose" and "[t]o put together or make by combining various elements or ingredients"); *Prepare*, New Oxford American Dictionary (3d ed. 2010) (defining "prepare" to

mean, inter alia, "make (something) ready for use" and "make (food or a meal) ready for cooking or eating"); *Prepare*, Webster's New World College Dictionary (4th ed. 2009) (defining "prepare" to mean, inter alia, "to make ready, usually for a specific purpose" and "to put together or make out of ingredients, parts, etc., or according to a plan or formula"). And the definition of "preserve" includes "treat[ing] or refrigerat[ing] (food) to prevent its decomposition or fermentation." *Preserve*, The New Oxford American Dictionary (3d ed. 2010); *see Preserve*, The American Heritage Dictionary (5th ed. 2011) (defining "preserve" to mean "prepare (food) for storage or future use, as by canning or salting"); *Preserve*, Webster's New World College Dictionary (4th ed. 2009) (defining "preserve" to mean, inter alia, "to prepare (food), as by canning, pickling, salting, etc., for future use"). Taken together, HTSUS Heading 2008 covers "seeds" that are "fit to be eaten" and either "made ready" for consumption or "treat[ed] or refrigerate[d] . . . to prevent . . . decomposition or fermentation."[7] The subject merchandise indisputably is made ready for consumption through processing, flavoring, and packaging. *See Well Luck*, 208 F. Supp. 3d at 1368.

Having considered the Heading, legislative history, and Chapter Notes consistent with GRI 1, we turn to the relevant ENs. *Fuji*, 519 F.3d at 1357. The EN to HTSUS Heading 2008 confirms our conclusion. It provides that HTSUS Heading 2008 covers "fruit, nuts and other edible parts of plants, whether whole, in pieces or crushed, . . . prepared or preserved" including, inter alia, certain nuts that are "dry-roasted, oil-roasted or fat-roasted, whether or not containing or coated with vegeta-

---

[7]  This definition is consistent with the definition at the time of the HTSUS's enactment. *See Airflow*, 524 F.3d at 1291 n.2.

ble oil, salt, flavours, spices or other additives"; and explains that the products under HTSUS Heading 2008 "are generally put up in . . . airtight containers." EN, Heading 2008. Thus, the EN provides that the seeds may be "prepared" using the very processes performed on the subject merchandise. *See Well Luck*, 208 F. Supp. 3d at 1367 (stating that the subject merchandise "consists of three varieties of *wet-cooked* and/or *roasted, salted, flavored* and/or unflavored *sunflower seeds* in unbroken shells" (emphases added) (internal quotation marks and citations omitted)); *see also id.* at 1368 (discussing the processes of roasting, salting, flavoring, and packaging the subject merchandise), 1377 ("It is undisputed that all varieties of [Well Luck]'s imported merchandise are roasted and salted." (citations omitted)). The subject merchandise thus is prima facie classifiable under HTSUS Heading 2008, as Well Luck now concedes. Oral Arg. at 6:13–19, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-1816.mp3 (Q: "Is your product *not* classifiable under [HTSUS Heading] 2008?" A: "It is.").

C. GRI 3(a) Dictates that the Subject Merchandise Properly Is Classified Under HTSUS Heading 2008

Given that the subject merchandise is prima facie classifiable under both HTSUS Headings 1206 and 2008, "the question is which is the more appropriate classification." *Archer Daniels*, 561 F.3d at 1317. Because GRI 2 does not apply to the subject merchandise, *see* GRI 2(a)–(b), we proceed to GRI 3, *see* GRI 3; *see also* Oral Arg. at 6:37–59 (acknowledging, by Well Luck's counsel, that where neither GRI 2(a) nor 2(b) applies, GRI 3 would apply, as is the situation here); *id.* at 18:43–19:39 (acknowledging the same by the Government).

GRI 3(a) provides that "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a). When applying GRI 3(a), "the court should determine

which heading is most specific, comparing only the language of the headings and not the language of the subheadings." *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1352 (Fed. Cir. 2000) (citation omitted). In addition, "we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *LeMans*, 660 F.3d at 1316 (internal quotation marks and citation omitted).

We determine that HTSUS Heading 2008 is more specific than HTSUS Heading 1206. HTSUS Heading 1206 covers "[s]unflower seeds, whether or not broken," whereas HTSUS Heading 2008 covers "[f]ruit, nuts and other edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included: [n]uts, peanuts (ground-nuts) and other seeds, whether or not mixed together." HTSUS Heading 2008's requirement that the subject merchandise be "prepared or preserved" renders it more difficult to satisfy than sunflower seeds in HTSUS Heading 1206 because preparation and preservation "involve[] some degree of processing or addition of ingredients." *Orlando Food*, 140 F.3d at 1441. "Therefore, because the requirements of [HTSUS Heading 2008] are more difficult to satisfy, it is the more specific heading, and under [GRI 3(a)], it governs the classification of the [subject merchandise]." *Id.*; *see id.* (finding an HTSUS heading "for preparations for sauces, [to be] more specific than [an HTSUS heading] which covers prepared and preserved tomatoes" because "producing a preparation for a sauce necessarily involves some degree of processing or addition of ingredients," while "prepared or preserved tomatoes . . . mandate[] only minimal processing," such that the former is "more difficult to satisfy"); *see also Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1374 (Fed. Cir. 2009) (reiterating *Orlando Food*'s holding that the "heading [that] is more difficult to satisfy . . . [is] more specific"

and holding that a heading that "covers only processed products" "encompasses a narrower range of items and uses" than a heading that "covers a large variety of processed and unprocessed fiberboard products").[8]  Accordingly, GRI 3(a) dictates that classification under HTSUS Heading 2008 is preferred.[9]

Having determined that the subject merchandise properly is classified under HTSUS Heading 2008, we apply GRI 6 to determine the appropriate subheading.

_____

[8]    Our conclusion is unaltered by the EN to GRI 3(a)'s statement that "[a] description by name is more specific than a description by class," EN (IV)(a), GRI 3(a), and by the fact that HTSUS Heading 1206 identifies "[s]unflower seeds" by name.  Instead, we have previously recognized that the "[ENs] are not legally binding," *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1362 (Fed. Cir. 2011) (citation omitted), and the particular EN at issue itself acknowledges that this general rule regarding specificity does not always apply, *see* EN (IV), GRI 3(a) (stating that "[i]t is not practicable to lay down hard and fast rules by which to determine whether one heading more specifically describes the goods than another").

[9]    If HTSUS Headings 1206 and 2008 were equally specific, we would turn to GRI 3(b), which would not apply here because it only applies to "[m]ixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale."  GRI 3(b).  Thus, we would apply GRI 3(c), which provides that, "[w]hen goods cannot be classified by reference to [GRI] 3(a) or 3(b), they shall be classified under the heading which occurs *last in numerical order* among those which equally merit consideration."  GRI 3(c) (emphasis added).  Because HTSUS Heading 2008 occurs "last in numerical order," it would govern the classification.

*See* GRI 6 (applying to "the classification of goods in the subheadings" and explaining that "only subheadings at the same level are comparable"); *see also Orlando Food*, 140 F.3d at 1442. At the six-digit subheading level, the subject merchandise does not fall within the terms of HTSUS Subheading 2008.11, which covers "[p]eanuts (ground-nuts)," so we turn to HTSUS Subheading 2008.19, which covers "[o]ther, including mixtures" and aptly describes the subject merchandise. Because the subject merchandise does not fall within any of the eight-digit level subheadings preceding HTSUS Subheading 2008.19.90, it properly is classified under HTSUS Subheading 2008.19.90, which covers "[o]ther, including mixtures: [o]ther." *See Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002) (holding that, where merchandise properly is classified under a particular heading but does not fall within a specific subheading, it properly is classified under the relevant heading's "basket" or "catch-all" provision). Indeed, the parties do not contest the CIT's conclusion that, if the subject merchandise properly is classified under HTSUS Heading 2008, then it falls within HTSUS Subheading 2008.19.90. *See Well Luck*, 208 F. Supp. 3d at 1377; *see also* Appellee's Br. 1 (arguing that the subject merchandise properly is classified under HTSUS Subheading 2008.19.90). *See generally* Appellant's Br. (failing to argue for the application of any other Subheading under HTSUS Heading 2008). Therefore, we conclude that the subject merchandise properly is classified under HTSUS Subheading 2008.19.90.

## CONCLUSION

We have considered Well Luck's remaining arguments and find them unpersuasive. Accordingly, the Judgment of the U.S. Court of International Trade is

## **AFFIRMED**