ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| ECC International Constructors, LLC | ) | ASBCA Nos. 59138, 59586 |
| | ) | 59643, 60284 |
| | ) | |
| Under Contract No. W912ER-10-C-0054 | ) | |

APPEARANCES FOR THE APPELLANT: R. Dale Holmes, Esq.
Amy M. Kirby, Esq.
 Cohen Seglias Pallas Greenhall
  & Furman PC
 Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
 Engineer Chief Trial Attorney
Sarah L. Hinkle, Esq.
Matthew Tilghman, Esq.
 Engineer Trial Attorneys
 U.S. Army Engineer District, Middle East
 Winchester, VA

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

The parties move for summary judgment on issues related to a contract to build a compound outside a military base in Afghanistan. The parties have filed voluminous briefs with numerous proposed statements of undisputed facts. In an effort to streamline the issues and ready the appeals for hearing, this decision will only address select issues that pertain to contract interpretation. Matters of contract interpretation are questions of law and are amenable for resolution through summary judgment. *Varilease Technology Group, Inc. v. United States*, 289 F.3d 795 (Fed. Cir. 2002). Contract interpretation begins with examination of the plain language of the written agreement. *LAI Services, Inc. v. Gates*, 573 F.3d 1306, 1314 (Fed. Cir. 2009). The terms are given their plain and ordinary meaning; if the contract language is clear and unambiguous, the plain language controls, and extrinsic evidence is not allowed to contradict the plain language. *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003). The contract terms are interpreted and read as a whole, giving reasonable meaning to all of its parts, and without leaving a "portion of the contract useless, inexplicable, void, or superfluous." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Avant Assessment, LLC,* ASBCA No. 58867, 15-1 BCA ¶ 36,067 at 176,127 (citing FED. R. CIV. P. 56(a)). The Board has previously issued a decision in the above-referenced appeals. *See ECC International Constructors, LLC,* ASBCA No. 59138 *et al.,* slip op. (Jan. 24, 2019). Familiarity with the facts is presumed.

*"Additional" Voice and Data Outlets*

The following is not in dispute. In 2010, the parties contracted for appellant to construct a compound outside the International Security Assistance Force (ISAF) military base in Afghanistan (gov't mot. at 2, ¶¶ 1-2; app. resp. at 1-2, ¶¶ 1-2). The contract provides that, with respect to a "Joint Operations Center":

> One secure network outlet, one above secret network outlet
> and one NIPR net outlet **per every 4.5 square meters of
> office space.** One coax outlet per office.

(Gov't mot. at 11, ¶ 45 (§ 01 80 00.12 10, ¶ 10.16); app. resp. at 5, ¶ 45) The parties disagree on the interpretation of that provision. The government argues that the plain language is unambiguous. Appellant contends that adherence to the contract terms would require more outlets than necessary for the compound. (Gov't mot. at 40-43; app. resp. at 40-44). We apply the principle of *noscitur a sociis,* which teaches that "a word is known by the company it keeps," so as to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words. *Schlumberger Technology Corp. v. United States,* 845 F.3d 1158, 1165 (Fed. Cir. 2017). Because the provision uses the term "office space" in one sentence and the term "office" in the next, we interpret the term "office space" to mean "the space within an office," within the meaning of the provision. Accordingly, the provision requires one secure network outlet, one above secret network, and one NIPR net outlet for every 4.5 square meter increment of space within an "office" (defined as any space requiring a coax outlet under the provision). To illustrate, if an office measures 4.5 square meters, the office shall have one secure network outlet, one above secret network, and one NIPR net outlet; if an office measures more than 4.5 square meters but fewer than 9 square meters, one of each; if 9 square meters, two of each; and so on. Thus, we find the government's argument persuasive and grant summary judgment on this issue.

*Cable Ladder Rack*

The following is not in dispute. The contract provides that:

> UL listed, black painted, cable ladder rack...**shall be
> installed around the perimeter of the communication**

2

**and server rooms.... The cable ladder shall be the Telco
type as described in the I3A specifications.**

(App. resp. at 63, ¶ 287 (§ 01 80 00.12 10, ¶ 10.11.5); gov't resp. at 45, ¶ 287)

The parties disagree on the interpretation of the term "perimeter" within the meaning of that provision, with the government contending that the language is unambiguous, and appellant arguing that the term does not mean "entire perimeter (app. resp. at 65-68; gov't mot. at 50-52). Among the definitions of the term "perimeter" are "the continuous line forming the boundary of a closed geometric figure" and "the outermost parts of a boundary of an area or object." NEW OXFORD AMERICAN DICTIONARY 1303 (3d ed. 2010). Applying those definitions, the perimeter of a communications or server room is its boundary; that is, its walls.* Consequently, the provision requires the installation of a cable ladder rack around the walls of such a room. We see no meaningful distinction between the term "perimeter" and appellant's use of the characterization "entire perimeter" (app. resp. at 66); the latter smacks of tautology in that it says the same thing twice. *See* NEW OXFORD AMERICAN DICTIONARY 1779. Appellant relies upon the I3A specifications referenced in the provision above that depicts a Cable Rack Detail (Typical) that appellant says shows a cable ladder installed around only part of the perimeter of the depicted room (app. resp. at 63-64, ¶ 288; gov't resp. at 45, ¶ 288). However, that reference refers to the type of cable ladder to be used, not where to install the cable ladder, despite what the typical detail may depict. Accordingly, appellant's arguments must fail.

*Fiber Optic Combination Units (FOCU) Size*

The following is not in dispute. The contract provides that:

> **The fiber optic cables shall be terminated in floor
> mounted,** four post **relay rack combination units** that
> will allow splicing and patching within the same enclosure.
> **The enclosures shall be sized to contain a minimum of
> 48 fibers and a maximum of 144 fibers.**

(Gov't mot. at 16, ¶ 71 (§ 01 80 00.12 10, ¶ 10.4.1); app. resp. at 7, ¶ 71). The parties disagree on whether the provision requires each "enclosure" to be able to contain 144 fibers (gov't mot. at 52; app. resp. at 76). The plain unambiguous language of the

---

* We exclude from the "perimeter" of the room the door when closed; we presume that it would be absurd to interpret the provision to require that a cable ladder rack be installed on the inside of the door, and we should avoid such an interpretation. *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940).

provision requires that "enclosures," in general, be sized to contain at least 48 fibers but no more than 144 fibers; it does not require that each enclosure be sized to contain 144 fibers.

*Relocation and Disposal of "Spoils"*

Appellant moves for summary judgment that the government constructively changed the contract by directing appellant to "change the location and relocate all spoils disposed at the approved site" (app. resp. at 106-07). The government concedes "liability for entitlement" on this issue (gov't resp. at 70). We grant summary judgment to appellant that the government constructively changed the contract by directing appellant (1) to change the location of the spoils disposal site, and (2) to relocate to the changed location all spoils already disposed at the previously-approved disposal site.

## CONCLUSION

The parties' motions are granted and denied to the extent reflected by the foregoing opinion; otherwise, the motions are deferred.

Dated: March 4, 2019

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

4

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59138, 59586, 59643, 60284, Appeals of ECC International Constructors, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
