# United States Court of Appeals
# for the Federal Circuit

---

**WILTON INDUSTRIES, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1028

---

Appeal from the United States Court of International Trade in No. 10-CV-0066, Judge Gregory W. Carman.

---

Decided: November 5, 2013

---

MARIA E. CELIS, Neville Peterson LLP, of New York, New York, argued for plaintiff-appellant. With her on the brief were JOHN M. PETERSON and RICHARD F. O'NEILL.

BEVERLY A. FARRELL, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, and JEANNE E. DAVIDSON, Director, of Washington, DC, and BARBARA S. WILLIAMS, Attorney in Charge, International Trade Field Office, of New York, New York.

---

Before LOURIE, PROST, and TARANTO, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Wilton Industries, Inc. ("Wilton") appeals from the decision of the United States Court of International Trade (the "trade court") on summary judgment classifying decorative paper punches from Taiwan as "perforating punches and similar handtools" under subheading 8203.40.60 of the Harmonized Tariff Schedule of the United States ("HTSUS"). *Wilton Indus., Inc. v. United States*, 887 F. Supp. 2d 1293 (Ct. Int'l Trade 2012). Because the imported articles are described *eo nomine* by HTSUS Heading 8203.40 and the trade court did not err in granting summary judgment as a matter of law, we affirm.

## BACKGROUND

Wilton imported paper punches from Taiwan under the brand name "Stampin' Up!" for use in scrapbooking and other craft projects. The punches are used to cut shapes or designs out of or in paper and come in a variety of shapes and sizes—between about 2–8 inches long by about 1–2.65 inches wide—encompassing thirty-nine models. Punches of each model are capable of making a hole of an intended shape or style or trimming the edge or corner of the paper with a decorative design. Each punch is actuated by hand to achieve the intended cut. The die components for each model are made of zinc alloy comprising about 75% of the total product weight and the housing, bottom, handle, and springs comprise the balance of the weight.

Except for one model, the United States Customs and Border Protection ("Customs") initially liquidated the punches under HTSUS subheading 8203.40.60 as "perforating punches and similar handtools" with a duty margin of 3.3% and denied Wilton's protests to classify them

under the duty free HTSUS subheading 8441.10.00 as "cutting machines of all kinds." Wilton then filed suit in the trade court.

In an effort to resolve the case, the parties subsequently entered into a stipulation agreement to classify twenty-three of the thirty-nine models at issue under subheading 8441.10.00 because they were too large to use in the hand. *Wilton*, 887 F. Supp. 2d at 1295. However, Customs maintained that subheading 8203.40.60 was the proper classification for the sixteen models that remained in dispute because they were "intended for use when held in the hand." *Id.* Both parties then moved for summary judgment.

The trade court denied Wilton's motion for summary judgment and granted the government's cross-motion for summary judgment. *Id.* at 1301. The court analyzed each party's proposed tariff headings pursuant to Rule 1 of the General Rules of Interpretation ("GRIs") by reviewing the terms of the headings and the legal notes and by consulting dictionaries to determine the common meaning of the relevant terms. *Id.* at 1298–1301. The court considered all the various models as the same subject merchandise and determined that the punches "*prima facie* fall under Heading 8203 as a perforating punch." *Id.* at 1299. In setting aside the parties' stipulation, the court also noted its ultimate duty "'to find the *correct* result, by whatever procedure is best suited to the case at hand.'" *Id.* at 1297 (quoting *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984)) (emphasis in original).

Wilton timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the trade court's grant of summary judgment without deference, *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011), and "decide

*de novo* the proper interpretation of the tariff provisions as well as whether there are genuine issues of fact to preclude summary judgment," *Millenium Lumber Distrib. Ltd v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). While we accord deference to a classification ruling by Customs relative to its "power to persuade," *United States v. Mead Corp.*, 533 U.S. 281, 235 (2001), we have "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms," *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005). We thus review the interpretation of the governing statutory provisions without deference. *Lynteq, Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992).

Wilton argues that the punches are machines for cutting paper and are therefore classifiable in subheading 8441.10.00 because they are described *eo nomine* as "[c]utting machines." Wilton maintains that heading 8441 covers "cutting machines of all kinds" and is intended, *inter alia*, to include machines for making finished paper into articles such as bags, envelopes, cartons, and boxes. Wilton contends that the commercial meaning of "perforating punch" as that term is recited in heading 8203 is an article used only to make holes in heavy-duty materials such as metal, not paper. Wilton further asserts that even if the subject punches were described by both 8441 and 8203, the rule of relative specificity (GRI 3(a)) compels classification under heading 8441. Wilton concedes that "[t]here are no disputed issues of fact." Appellant Br. 7.

The government maintains, and the trade court so held, that the subject punches are classifiable under heading 8203 because they are described *eo nomine* under that heading by the qualifiers (i) "perforating," *viz.*, makes a hole through something, and (ii) "handtools," *viz.*, used or worked by hand. We agree with the government and the trade court that the proper classification is under heading 8203.

Merchandise imported into the United States is classified under the HTSUS. The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category.

The classification of merchandise under the HTSUS is governed by the principles set forth in the GRIs and the Additional U.S. Rules of Interpretation. *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The GRIs are applied in numerical order and a court may only turn to subsequent GRIs if the proper classification of the imported goods cannot be accomplished by reference to a preceding GRI. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999); *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). GRI 1 provides that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the [remaining GRIs.]" GRI 1.

The proper classification of merchandise under the HTSUS is a two-step process. *Orlando Food*, 140 F.3d at 1439. First, we ascertain the meaning of the specific terms in the tariff provision, which is a question of law that we review without deference. *Id.* HTSUS terms are construed in accordance with their common and commercial meaning, which are presumed to be the same. *Carl Zeiss*, 195 F.3d at 1379. Second, we determine whether the goods come within the description of those terms, which is a factual inquiry that we review for clear error. *Orlando Food*, 140 F.3d at 1439. However, when there is no dispute as to the nature of the merchandise, then the two-step classification analysis "collapses entirely into a question of law." *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006).

The identity of the imported articles here is not in dispute; they are marked and sold as punches that are worked by hand to make holes through paper and to cut shapes in or from paper. The only issue in this case is how to classify the subject punches. Accordingly, there are no genuine issues of fact precluding summary judgment.

The resolution of this case thus turns on the interpretation of two headings of the HTSUS and their accompanying subheadings, which read in relevant part as follows:

| Section XV | Base Metals and Articles of Base Metal |
| --- | --- |
| Chapter 82 | Tools, implements, cutlery, spoons and forks, of base metal; parts thereof of base metal |
| 8203 | Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting shears, pipe cutters, bolt cutters, perforating punches and similar handtools, and base metal parts thereof: |
| 8203.40 | Pipe cutters, bolt cutters, *perforating punches* and similar tools, and parts thereof: |
| 8203.40.60 | Other (including parts) |
| Note 1 | [T]his chapter covers only articles with a blade, working edge, working surface or other working parts of: (a) Base metal; . . . . |
| Note 2 | Parts of base metal of the articles of this chapter are to be classified with the articles of which they are parts |

| Section XVI | Machinery and Mechanical Appliances; Electrical Equipment; Parts Thereof; Sound Recorders and |
| --- | --- |

| | Reproducers, Television Image and Sound Recorders and Reproducers, and Parts and Accessories of such articles |
|---|---|
| Chapter 84 | Nuclear reactors, boilers, machinery and mechanical appliances; parts thereof |
| 8441 | Other machinery for making up paper pulp, paper or paperboard, including cutting machines of all kinds, and parts thereof: |
| 8441.10.00 | Cutting machines |
| Note 1(k) | This section does not cover: Articles of chapter 82 . . . |

HTSUS (Rev. 2, April 16, 2008) (emphasis added).

Preliminarily, we note that the trade court was correct that no analysis beyond GRI 1 is necessary here. The imported merchandise is described *eo nomine* by heading 8203.40 as perforating punches. Both the trade court and Customs have understood the reference in heading 8203 to "perforating punches and similar handtools" to limit the category to punches that are "handtools." There is no dispute that all of the punches at issue are operated by hand and can be operated without being set on a surface, even if some might best be operated on a surface. That is enough for the language of the heading to apply. The heading is not ambiguous and wholly encompasses the subject articles.

Furthermore, contrary to Wilton's contention, heading 8203 does not limit the recited punches to those that are used in commerce to perforate only certain heavy-duty materials such as metal. The common meaning of "punch" recognizes paper as a medium through which to make a hole. The Explanatory Notes for HTSUS Chapter 82 identify that examples of perforating punches covered by heading 8203 include ticket punches for making holes

in paper and saddlers' or mattress punches for making holes in materials such as leather or felt. *Id.*

The plain language of subheading 8441, on the other hand, covers cutting machines "*for making up* paper pulp, paper or paperboard" (emphasis added). Wilton's assertion that the subject punches are described *eo nomine* as "cutting machines of all kinds" ignores the importance of the preceding language "for making up." In arguing essentially that "paper 'cutting machines of all kinds,'"—including the subject punches—are properly classified in subheading 8441.10.00, Wilton confuses paper cutting with making up paper. In context, the machinery described in Chapter 84 is unambiguously directed to the industrial manufacture of paper and paper products. For example, heading 8439 expressly covers machinery for making paper, and the plain language of 8441 recites "[o]ther machinery for making up paper . . . ." *Id.* The subject punches, which are undisputedly used for craft projects such as decorative scrapbooking, not "making up" paper, are clearly not the type of "cutting machines" included in the "[o]ther machinery" contemplated by heading 8441.

Moreover, the Explanatory Notes state that Chapter 82 "covers tools which can be used independently in the hand, whether or not they incorporate simple mechanisms such as gearing, crank-handles, plungers, screw mechanisms or levers." *Id.* In contrast, the Notes specify that items are "generally classified in Chapter 84 if they are designed for fixing to a bench, a well, etc., or if, by reason of their weight or size or the degree of force required for their use, they are fitted with base plates, stands, supporting frames, etc., for standing on the floor, bench, etc." *Id.* Therefore, even if the subject punches were prima facie classifiable under both 8203 and 8441, they are more specifically described by heading 8203. GRI 3(a). Finally, even if the subject punches could not be classified in accordance with GRI 1–3, they would correctly be classi-

fied under heading 8203 because that is the "heading appropriate to the goods to which they are most akin" pursuant to GRI 4, *i.e.*, hand tools such as pipe cutters and bolt cutters, not machinery and mechanical appliances such as nuclear reactors and boilers.

## CONCLUSION

For the foregoing reasons, we conclude that the trade court did not err in granting summary judgment in favor of the government as a matter of law because the imported articles are provided for *eo nomine* as "perforating punches" in HTSUS subheading 8203.40. Accordingly, the judgment of the trade court is affirmed.

**AFFIRMED**