Slip Op. 24-123

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ILDICO INC., | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| UNITED STATES, | |
| Defendant. | Consol. Court No. 18-00136 |

## OPINION AND ORDER

Dated: November 1, 2024

[In a Customs classification matter, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.]

Mandy E. Kirschner, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, argued for the plaintiff Ildico Inc.

Mathias Rabinovitch, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for the defendant. On the brief were Marcella Powell, Senior Trial Counsel, Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-in-Charge, and Aimee Lee, Assistant Director. Of counsel on the brief was Fariha B. Kabir, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

Restani, Judge: Before the court are cross-motions for summary judgment. Pl.'s Mot. for Summ. J., ECF No. 35 (Mar. 12, 2024) ("Pl. MSJ"); Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J., ECF No. 42 (May 30, 2024) ("Def. Cross MSJ"). Plaintiff Ildico Inc. ("Ildico") challenges the United States Customs and Border Protection's ("Customs") classification of certain luxury watches under heading 9102 of the Harmonized Tariff Schedule of the United States ("HTSUS"). At issue is whether the cases of the watches imported by Ildico are "wholly of" precious metal. Broadly, Ildico argues that because the principal parts

of the case are made of eighteen-karat gold, the watch and its requisite components are properly classified under subheading 9101, HTSUS.  Pl. MSJ at 3.  The government contends that the HTSUS uses a broad definition of case; thus, because the cases include parts not made of precious metals such as the sapphire crystal backs or screws, heading 9102 is appropriate.[1]  Def. Cross MSJ at 5–6.  For the reasons laid out below, the court concludes that the watches are watches with cases of material other than precious metal classified in heading 9102, HTSUS.

## BACKGROUND

### I.        Procedural Background

There are no material factual disputes in this case.[2]  Pl. MSJ at 1; Def. Cross MSJ at 1.  The subject merchandise in question is thirty-five styles of Richard Mille brand wrist watches manufactured in Switzerland and imported by plaintiff Ildico Inc.  Def.'s Rule 56.3 Statement of Material Facts Not in Dispute, ¶¶ 2, 5, ECF No. 42-2 (May 30, 2024) ("Def.'s SMF"); Pl.'s Rule 56.3 Resp. to Def.'s SMF, ¶¶ 2, 5, ECF No. 46-6 (July 12, 2024); Decl. of Anton Rubianto ("Rubianto Decl."), ¶¶ 9, 17, ECF No. 35-1 (Mar. 12, 2024).  Ildico does business as Richard Mille Americas and is the exclusive importer and distributor of Richard Mille brand watches in North America.  Rubianto Decl., ¶ 7.  Ildico imported the merchandise in multiple entries made in 2015 and 2016.  Summons, ECF No. 1 (June 14, 2018).  In 2016, Customs completed a classification audit of Ildico's imported Richard Mille watches and informed Ildico that the watches it audited were classified incorrectly under heading 9101 as watches with cases of gold.  Pl.'s Rule 56.3 Statement of Undisputed Material Facts, ¶ 4, ECF No. 35-5 (Mar. 12, 2024) ("Pl.'s SMF"); Def.'s

---

[1] There is no dispute as to the proper subheadings.  Only the headings are in dispute.

[2] Although the government originally challenged plaintiff's proof as to its imports as incomplete, it appears to have abandoned that challenge.  Def.'s Resp. to Pl.'s SMF at 10; Oral Argument at 2:29.  The court agrees that plaintiff's affidavits describing the imports seem complete and are not contradicted.

Resp. to Pl.'s SMF, ¶ 4, ECF No. 42-1 (May 30, 2024). Customs instructed Ildico to classify the watches under heading 9102 as "other" watches. Def.'s Resp. to Pl.'s SMF, ¶ 4.

Customs classified the subject watches under three subheadings of heading 9102.[3] Id. Ildico timely protested the liquidations and argued that the watches were properly classified under heading 9101 as watches with a case of precious metal. Pl.'s SMF, ¶ 5; Def.'s Resp. to Pl.'s SMF, ¶ 5. On December 19, 2017, and February 14, 2018, Customs denied the protests. Pl.'s SMF ¶¶ 6, 7; Def.'s Resp. to Pl.'s SMF, ¶¶ 6, 7. Ildico commenced this action to challenge this classification issue.

## II.    Description of Subject Merchandise

The subject merchandise is thirty-five styles of Richard Mille watches. Def.'s SMF, ¶¶ 2, 5; Pl.'s Rule 56.3 Resp. to Def.'s SMF, ¶¶ 2, 5. Each watch in the litigation has three parts made of eighteen-karat gold – the bezel (also known as the front), middle case, and case back. Supp. Decl. of Michelle Shipley, ¶ 6, ECF No. 46-2 (July 12, 2024) ("Supp. Shipley Decl."). Eighteen-karat gold is comprised of seventy-five percent metal alloy by weight and twenty-five percent of other metals, such as palladium, nickel, silver, or copper, by weight. Pl. MSJ, Ex. 13, at 398. Each watch has mechanical movement with over seventeen jewels in the movement. Rubianto Decl., ¶¶ 24, 25.

On the front and back of each watch, the case contains a transparent synthetic sapphire crystal. Decl. of Michelle Shipley, ¶¶ 33, 42 ECF No. 35-2, (Mar. 12, 2024) ("Shipley Decl."). The crystal on the front sits above the watch dial, revealing the hands and protecting the watch from damage. Id. at ¶ 35. The crystal on the back sits below the dial, revealing the movement and protecting the watch from damage. Id. at ¶¶ 33, 42.

---

[3] Subheadings 9102.21.70, 9102.21.90, and 9102.29.60, HTSUS (2015, 2016).

The front crystal is secured to the top of the bezel with a plastic gasket. Shipley Decl., ¶ 38. A rubber o-ring gasket is placed inside the case to seal the bezel and middle cases.[4] Id. The o-ring gasket is held in place with a stainless-steel sealing flange.[5] Id. at ¶¶ 38–39. Titanium screws fasten the bezel and case back to the middle case, and rubber washer gaskets provide a cushion between the watch movement and middle case. Id. at ¶ 40. A winding stem attaches to the movement of the case through an eighteen-karat gold crown tube mounted on the middle case to wind the watch's mainspring and set the time. Id. at ¶¶ 59–60. Several styles have eighteen-karat gold pushers (buttons) with a guard of titanium on the middle case to serve a stopwatch timing function.[6] Id. at ¶ 61; Pl. MSJ at 23.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(a) (2018). The court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT Rule 56(a). Summary judgment is appropriate in tariff classification cases where "there is no genuine dispute as to the nature of the merchandise and the classification turns on the proper meaning and scope of the relevant tariff provisions." Deckers Outdoor Corp. v. United States, 714 F.3d 1363, 1371 (Fed. Cir. 2013). The court decides

---

[4] A gasket creates a seal between different parts of the watch, such as between the front crystal and the bezel, to create water resistance and to protect the watch from debris. Shipley Decl. at ¶ 38.

[5] A flange is a "projecting flat rim, collar, or rib, used to strengthen an object, to guide it, to keep it in place, to facilitate its attachment to another object, or for other purposes." Flange, Oxford English Dictionary, https://www.oed.com/dictionary/flange_n?tab=meaning_and_use#4326306 (last visited Sept. 13, 2024).

[6] The pushers on the watch are buttons that allow the user to perform a function on the motion. Shipley Decl., ¶ 61. They are a control mechanism commonly found on chronograph watches, which are watches with the added capability of measuring elapsed time with precision. What is a Chronograph Watch?, Invicta Stores, https://invictastores.com/glossary/term/chronograph/ (last visited Sept. 9, 2024). A titanium guard protects these pushers from damage. Shipley Decl., ¶ 61.

classification de novo.  See 28 U.S.C. § 2640(a)(1); Telebrands Corp. v. United States, 865 F.

Supp. 2d 1277, 1279–80 (CIT 2012).

## DISCUSSION

### I.       Legal Framework

In a tariff classification dispute, the plaintiff has the burden of demonstrating that the

government's classification is incorrect but does not bear the burden of establishing the correct

classification.  Jarvis Clark Co. v. United States, 733 F.2d 873, 876 (Fed. Cir. 1984).  Independent

of the arguments presented, the court has a statutory mandate to "reach a correct result."  Id. at

878; see 28 U.S.C. § 2643(b).  The court "first considers whether 'the government's classification

is correct, both independently and in comparison with the importer's alternative.'"  Shamrock

Building Materials, Inc. v. United States, 619 F. Supp. 3d 1337, 1342 (CIT 2023) (quoting Jarvis

Clark, 733 F.2d at 878).

The court determines the meaning of the tariff term as a matter of law and whether the

subject merchandise is properly defined by that term as a question of fact.  Wilton Indus. v. United

States, 741 F.3d 1263, 1266 (Fed. Cir. 2013) (citations omitted).  To determine the meaning of and

apply a tariff term to the facts, the court applies the General Rules of Interpretation ("GRIs") and,

if applicable, the Additional U.S. Rules of Interpretation.  Id.  The court applies the GRIs in

numerical order and only continues to a subsequent GRI if "proper classification of the imported

goods cannot be accomplished by reference to a preceding GRI."  Id.  GRI 1 requires classification

to "be determined according to the terms of the headings and any relative section or chapter notes."

GRI 1, HTSUS.

The HTSUS chapter and section notes are considered binding statutory law.  See BenQ

Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (citation omitted).  The HTSUS

is derived from the international Harmonized Commodity Description and Coding System ("HTS"), which "provides a common core language for trade." Marubeni Am. Corp. v. United States, 35 F.3d 530, 533 (Fed. Cir. 1994). When "a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary." Russell Stadelman & Co. v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001) (citations omitted). When determining the common meaning of tariff terms, the court may "consult lexicographic and scientific authorities, dictionaries, and other reliable information" or may rely on its "own understanding of the terms used." Baxter Healthcare Corp. v. United States, 182 F.3d 1333, 1338 (Fed. Cir. 1999) (citation omitted). The court will also consider the Explanatory Notes ("ENs") to the HTS in interpreting the HTSUS terms. Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999). Although the ENs are not dispositive of the meaning of the tariff terms, they are "generally indicative of [the] proper interpretation of the various provisions" and so are persuasive on the international meaning of the tariff terms. Id. When interpreting the terms of the HTSUS, the court aims to identify what the tariff would mean if used as part of the "common core language of trade" and where appropriate consider the British definition of the term. Blue Sky Color of Imagination, LLC v. United States, 698 F. Supp. 3d 1243, 1248 (CIT 2024). The court presumes that the terms of the HTSUS may encompass both the British and American definitions of the terms. Id.

The court reads the HTSUS as a comprehensive document, the provisions of which should be read consistently and complementary to one another. See Toy Biz, Inc. v. United States, 22 CIT 831, 834–35, 19 F. Supp. 2d 1128, 1131–32 (1998) (agreeing that "the entire context of the [HTSUS] must be considered and every effort made to give full force and effect to all language contained therein"). By considering the common and commercial meanings of tariff terms, the

court construes the meaning of the HTSUS in the light of commercial realities and the real-world context of the industries in which the subject merchandise exists.

## II.     Competing Tariff Provisions

Customs classified the Richard Mille watches under heading 9102, HTSUS. The relevant portion of Chapter 91 of the HTSUS reads:

Heading 9102          Wrist watches, pocket watches and other watches, including stop watches, other than those of heading 9101:

Ildico contends that the watches should enter under heading 9101, HTSUS, as:

Heading 9101          Wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal:

Chapter 91, Note 2 elaborates on the scope of heading 9101 and how it can be differentiated from subject merchandise classified under heading 9102. It states that "heading 9101 covers only watches with case wholly of precious metal or of metal clad with precious metal, or of the same materials combined with natural or cultured pearls, or precious or semi precious stones (natural, synthetic or reconstructed)." HTSUS. The key language here is that the heading is defined by the makeup of the case, limiting heading 9101 to cases made "wholly of precious metal." The fundamental dispute is thus whether the cases of the watches imported by Ildico are "wholly of precious metal."

## III.    The Watches Properly Fall Under Heading 9102 of the HTSUS

In its briefing the government made many arguments, at least two of which were not tenable in any way. First, that eighteen-karat gold is not pure gold and therefore the watch cases are not "wholly of" precious metal. The court will not discuss this argument further as the government

now has rightly abandoned it.[7]  Oral Argument at 31:26.  Second, it also asserted that certain parts that operate the watch are part of the case.  The government has also correctly abandoned that argument.  Oral Argument at 2:36, 40:00.  Another argument no longer pressed is that certain case sealing features such as the rubber sealing gasket and the steel flange that hold it renders the case not of precious metal.  Id.  The impracticality of a seal of precious metal makes this an unlikely feature on which the HTSUS headings would distinguish between cases of precious or base metal. While not as untenable as the first two arguments, it is also properly set aside.  This leaves two case features that arguably must be of precious metal for classification under heading 9101: the watch back crystal and the visible screws that fasten the front and body of the case together.  The court will address both parts.

### a. The Synthetic Sapphire Crystal Back is Part of the Watch Case

Ildico argues specifically that the synthetic sapphire crystals on the back of the Richard Mille watches are not part of the watch case because they are functionally and materially the same as the watch glasses on the front of the watches, which are not part of the watch case.  Pl. MSJ at 31–32.  The government contends that Note 1(b)'s definition of "cases," while not expressly including watch glasses, encompasses the synthetic sapphire crystal case back because the definition of a watch back is not contingent on the material of the back.  Def. Cross MSJ at 24; Oral Argument at 42:00.  This issue turns on whether the sapphire crystal backs of the Richard Mille watches are a separate component of the watch, i.e. watch glasses, or whether they are merely the back of the watches and therefore part of the watch case, rendering the watch case not "wholly of precious metal."

---

[7] Plaintiff should refrain from gloating as it also made several arguments, particularly with regard to the minor parts issue, that resulted in unnecessary extra briefing.

Each Richard Mille watch is equipped with a rectangular-shaped case back made of eighteen-karat gold. The case back has an open center which is designed to hold the back watch crystal, which is a transparent synthetic sapphire that is covered on the back with the same Blue-Violet ARdur® antiglare coating as on the front.[8] Shipley Decl., ¶¶ 33–34, 41–42. The transparent synthetic sapphire fitted to the case back allows a viewer to observe the inner workings of the watch. Id. at ¶ 43. In the industry, case backs with open centers that are fitted with a crystal, like the watches in this action, are called exhibition or open case backs.[9] Id. at ¶¶ 49–50.

The court begins its analysis under GRI 1. GRI 1 requires classification to "be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS. Heading 9101 of the HTSUS includes "wrist watches, pocket watches and other watches, including stop watches, with case of precious metal or of metal clad with precious metal." Chapter 91, HTSUS (2015, 2016) (emphasis added). Chapter 91, Note 2 of the HTSUS expands on the meaning of "case of precious metal," stating:

> Heading 9101 covers only watches with case wholly of precious metal or of metal clad with precious metal, or of the same materials combined with natural or cultured pearls, or precious or semiprecious stones (natural, synthetic or reconstructed) of headings 7101 to 7104. Watches with case of base metal inlaid with precious metal fall in heading 9102.

[8] Although heading 9101 allows a precious metal case to be combined with a synthetic precious or semiprecious stone of heading 7101 to 7104, the synthetic crystal backs do not fall into this category. Chapter 91, Note 2, HTSUS (2015, 2016). The Explanatory Note to heading 9101 states that "watches of this heading . . . may be set with gem stones or with natural or cultured pearls . . ." This suggests that the drafters of the HTS contemplated a watch set with natural, synthetic, or reconstructed precious or semiprecious stones. The synthetic sapphire crystals at issue do not match this description, and plaintiff does not allege otherwise. Therefore, the issue is only whether or not they are a part of the watch case.

[9] The sapphire crystal backs of the watches in question make up a substantial part of the back of the watch cases. They clearly serve a protective function because they are virtually identical in shape and size to the watch glass on the front of the watch, which serve a protective function. The court does not address the question of whether a smaller sapphire crystal making up an insubstantial part of the watch back would be part of a watch case.

Chapter 91, Note 2, HTSUS (2015, 2016) (emphasis added).

General Note 3(h(v)) to the HTSUS defines "wholly of":

> The terms "wholly of", "in part of", and "containing", when used between the description of an article and a material (e.g. "woven fabrics, wholly of cotton"), have the following meanings: (A) "wholly of" means that the goods are, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material[.]

General Note 3, HTSUS (2015, 2016).  Subpart (v) of General Note 3(h) goes on to note that "with regard to the application of the quantitative concepts specified above, it is intended that the de minimis rule apply."  Additional U.S. Note 1(b) defines the term "cases" as:

> The term "cases" embraces inner and outer cases, containers and housings for movements, together with parts or pieces, such as, but not limited to, rings, feet, posts, bases and outer frames, and any auxiliary or incidental features, which (with appropriate movements) serve to complete the watches, clocks, time switches, and other apparatus provided for in this chapter.

Chapter 91, Additional U.S. Note 1(b), HTSUS (2015, 2016).

The court will consider whether the sapphire crystal backs are watch glasses, as alleged by plaintiff, and, if so, whether satisfying the definition of "watch glass" renders the crystal backs separate from "watch cases."

Neither the HTSUS nor the Explanatory Notes define "watch glass."  As indicated, when the HTSUS does not define terms, they are "construed according to their common and commercial meanings, which are presumed to be the same absent contrary legislative intent."  Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003); see also Chemtall Inc. v. United States, 179 F. Supp. 3d 1200, 1203 (CIT 2016).  To establish the common and commercial meanings of the words of the HTSUS, the court consults dictionaries, encyclopedias, and other lexicographical sources.  Former Emps. of Murray Eng'g, Inc. v. Chao, 346 F. Supp. 2d 1279, 1285 n.14 (CIT

2004). The court may rely on its own understanding of the terms used in construing HTSUS headings and subheadings. Specialty Commodities Inc. v. United States, 190 F. Supp. 3d 1277, 1283 (CIT 2016) (citing Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999)).

The Oxford English Dictionary defines "watch-glass" as a "thin piece of glass, usually concavo-convex in form, fitted into the case of a watch over dial plate."[10] According to the Oxford English Dictionary, the "dial plate" is "the faceplate of a dial, esp. that of a clock, watch, or sundial, on which the hours are marked."[11] Similarly, the Merriam Webster dictionary defines "watch crystal"[12] as "a concavo-convex glass covering the dial of a watch."[13] Other sources more specific to the watch industry define "watch glass" more broadly. For example, the FH Professional Dictionary of Horology defines "watch-glass" as a "thin plate of mineral glass or transparent synthetic material . . . which protects the internal contents of watches and clocks. Fitted to the front or back of time-keeping instruments to allow the time to be read and the inner workings to be viewed."[14] Yet, some industry-specific sources differ. For example, Windgate's Watch

---

[10]   Watch-glass, Oxford Eng. Dictionary, https://www.oed.com/dictionary/watch-glass_n?tab=meaning_and_use#15022414 (last visited Sept. 9, 2024).

[11]   Dial plate, Oxford Eng. Dictionary, https://www.oed.com/dictionary/dial-plate_n?tab=meaning_and_use#6925372 (last visited Sept. 9, 2024).

[12] Some dictionaries use the term "watch crystal" instead of "watch glass." The two terms are synonymous. "A watch glass is an industry term that is synonymous with a watch crystal." Shipley Decl., ¶ 55. The Watch Pages glossary defines watch "crystal" as "[t]he glass covering the face or back of a watch protecting it from dirt, water, and other elements." Pl. MSJ, Ex. 13 at 398. The government does not dispute that these terms are synonymous.

[13]   Watch crystal, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/watch%20crystal (last visited Sept. 9, 2024).

[14] Watch-glass, Dictionary of Horology, https://dictionary.fhs.swiss/?l=en (last visited Sept. 9, 2024); see also Susanne Samuelsson, Watch Anatomy – Know the Lingo, The Watch Pages, https://www.thewatchpages.com/watch-anatomy/ (last visited Sept. 9, 2024) (emphasis added).

Dictionary defines the "crystal" as "the transparent part <u>over the dial used to protect the dial and hands of the watch</u>."[15]

Nonetheless, the sources that define "watch glass" as covering the front of a watch do not limit them to covering <u>only</u> the face of the watch, whereas other definitions noted above explicitly state that a watch glass may be on <u>either</u> the front or back of a watch. The more detailed definitions of "watch glass" stating that a watch glass may be on either side of a watch should control in the absence of any sources limiting a watch glass to the front of the watch. Further, the front and back watch crystals are made of the same materials and are virtually indistinguishable to the naked eye. The sapphire crystal backs are therefore "watch glasses."

Turning to the next issue, if the back crystal is a watch glass, is it still part of the case? The government, while arguing that the watch back crystal is part of the watch case, concedes that the watch glass covering the face of the watch is not part of the case. Oral Argument at 40:22. Practical considerations support this concession. Including a watch glass covering the face of the watch in the definition of a watch case would mean that, for a watch to be properly classified under heading 9101 as a watch having a case "wholly of" precious metal, the watch would either need to have no watch glass protecting the face at all or a watch "glass" made of gold, silver, or platinum. This would defeat the entire purpose of having a watch as the viewer would not be able to tell the time. There is no doubt, therefore, that the watch glass covering the watch face is not part of the watch case.

It does not necessarily follow, however, that a watch glass on the back of the watch is not part of the case. The watch glass on the back is of the same material as the front watch glass and

---

[15] <u>Crystal</u>, Windgate's Watch Dictionary, https://www.tic-tock.com/watch-dictionary (last visited Sept. 9, 2024) (emphasis added).

serves a similar function to the watch glass on the front in that it allows the watch parts to be seen. Yet, to find that the watch glass on the back is part of the case would not lead to the same absurd results as defeating the claimed classification because the watch has a glass front. Finding the back watch glass to be part of the case would merely mean that, for a watch to be classified in heading 9101, it would need a precious metal back, which is the norm. Otherwise, it would be classified under heading 9102. In this scenario, a watch could still be classified under heading 9101 and still be a watch because it could still be used to tell the time.

Of course, there are aesthetic characteristics of watches apart from their time-telling functions that some would argue are "essential" to the Richard Mille watches in question. Yet, the aesthetic value merely adds to the essential purpose of a watch. While finding that a watch back must be made entirely of precious metal to be classified under heading 9101 may interfere with these aesthetic considerations, it does not impede the essential function of a watch.

The HTS Explanatory Notes and Richard Mille's own inventory also supports classification in heading 9102. The EN to heading 9111, which covers watch cases specifically, states that "[w]atch cases and parts thereof may be of any material. They are mainly made of base metal . . . or of precious metal, or of metal clad with precious metal, or sometimes of plastics, ivory, agate, mother-of-pearl or tortoise shell." This suggests that the kind of material is not the determining factor for whether a component is part of the watch case. Therefore, the fact that the backs of the watches are partly made of sapphire crystal does not mean that the sapphire crystal is no longer part of the back. It merely means that the back is no longer "wholly of" precious metal. Richard Mille's own inventory reinforces this inference. Richard Mille sells a watch with a case

made entirely of sapphire crystal.[16]  One would not conclude that just because this watch is made of sapphire crystal, it does not have a case.  Rather, the sapphire crystal makes up the case and serves the same function of housing the movements of a watch that a metal case would.  This logic extends to the sapphire crystal backs.  While this example is not determinative of the issue, it is consistent with the conclusion that the material of the watch back does not control whether the back is part of the case.

Finally, although Customs ruled previously that a Swiss-Made Patek Philippe watch with a "sapphire crystal" on the back was classified under heading 9101, this ruling does not persuade the court that the watches in question therefore fall under heading 9101.[17]  Customs Ruling NY 268252.  Customs Rulings are not binding on the court but rather may be persuasive.  See United States v. Mead Corp., 533 U.S. 218, 235 (2001).  While the watch in question had a similar sapphire crystal back to the ones on the Richard Mille watches, the Ruling does not discuss the sapphire crystal back.  Further, Ildico presented no evidence that the photos of the watch that Customs considered when making the ruling revealed that the watch actually had a sapphire crystal back.  Pl. MSJ, Ex. 7 at 236–37.  Given some doubt as to what Customs was considering and given the absence of reasoning on the crucial point, this Ruling does not persuade the court that a watch with a sapphire crystal back is within heading 9101.

Based on all the foregoing reasons, the court finds that, while a watch glass on the front of a watch is not part of the case, a watch glass on the back of a watch is part of the case and renders the case not "wholly of" precious metal.

---

[16] Calibre RM56-01, Richard Mille, https://www.richardmille.com/historical-models/rm-56-01-tourbillon-sapphire (last visited Oct. 7, 2024).

[17] Patek Philippe Complications Chronograph White Gold Mens Watch 5170, SwissWatch Expo, https://www.swisswatchexpo.com/watches/patek-philippe-complications-chronograph-white-gold-mens-watch-5170-60833/ (last visited Sept. 10, 2024).

### b. The Court Does Not Resolve the Issue of Whether Titanium Screws Render the Watch Case not "Wholly of" Precious Metal

The court does not resolve whether various other parts need to be of precious metal as the crystal back watch glass defeats classification in heading 9101. For the sake of completeness, however, and because the parties briefed this issue extensively, the court will discuss the issue in brief. The question before the court is whether these watch subcomponents are included in the definition of a watch "case" and therefore render the case not "wholly of precious metal." [18] Ildico argues that a watch case is made up of only the bezel, middle, and case back. It argues that the case screws, among other minor parts, are not parts of the watch cases because they are parts of general use or are "de minimis" components of the watches.[19] Pl. MSJ at 23–24, 32–33. The government contends that the definition of case, as defined in Additional U.S. Note 1(b) to Chapter 91, is broad enough to include screws holding the front and back of the case together. Def. MSJ at 14–15, 18. Thus, the government concluded that the watch cases are not "wholly of precious metal" as various components including screws are not made of a precious metal. Id. at 2.

Each watch in question has a bezel, middle, and case back made of eighteen-karat gold. Supp. Shipley Decl., ¶ 6. The crown tubes, pushers, and some of the crowns are made of eighteen-karat gold. Shipley Decl., ¶¶ 60–61; Pl. MSJ at 23. The winding stem, pusher guards, case screws,

---

[18] For the purpose of Chapter 91, "precious metal" is defined by Chapter 71, Note 4 as "silver, gold, and platinum." Chapter 71, HTSUS (2015, 2016).

[19] Ildico extrapolates from General Note 3(h(v)) that because the "de minimis" rule applies when interpreting quantitative concepts, only the "principal parts" of the watch cases must be made "wholly of" precious metals. Pl. MSJ at 18. Neither the HTSUS nor any Explanatory Notes include this concept of "principal parts" in the definition of "cases." Rather, Ildico reasons that "principal parts" can be applied because "de minimis" means "insignificant," and the opposite of "insignificant" is "principal." Pl. MSJ at 18–19. The court need not resolve this today. Further, plaintiff argues that the parts of general use, if imported separately, are classified elsewhere. Pl. MSJ at 24. While true, it answers nothing because the parts at issue are imported as watches, not as separate parts.

washers, sealing gaskets, sealing flange, and some of the crowns are made of materials other than eighteen-karat gold.[20]  Shipley Decl., ¶¶ 39–40, 60–62.  Richard Mille chooses materials such as titanium, plastic, or rubber for these components because those materials are more properly suited for ensuring that the watches are durable and water resistant.  See Shipley Decl., ¶ 59 ("The case parts are fastened together by titanium screws with a stainless-steel washer placed between the screw and case.  Titanium screws are used rather than gold because they are more difficult to break and [gold screws] are not suitable to ensure water resistance.").

The court first considers the scope of the definition of watch "case" as outlined in Additional Note 1(b).  As noted previously, Additional U.S. Note 1(b) defines the term "cases" as:

> The term "cases" embraces inner and outer cases, containers and housings for movements, together with parts or pieces, such as, but not limited to, rings, feet, posts, bases and outer frames, and any auxiliary or incidental features, which (with appropriate movements) serve to complete the watches, clocks, time switches, and other apparatus provided for in this chapter.

Chapter 91, Additional U.S. Note 1(b), HTSUS (2015, 2016).

The government is correct that Additional Note 1(b) defines watch cases broadly.  Other provisions of the HTSUS, however, support a somewhat narrower reading of Additional Note 1(b) than asserted by the government.  In particular, heading 9111 pertains specifically to "watch cases and parts thereof."  This heading, though not specifically at issue in this case, provides valuable context for the meaning of the terms in headings 9101 and 9102 as the Additional and Explanatory Notes for these headings are unclear.  ENs A and B of heading 9111 state that the heading covers "cases for watches of heading 91.01 or 91.02" and "parts of these cases, including: (1) the case body . . . (2) the pendant . . . (3) the dome . . . (4) the bezel . . . (5) the bottom."  While the note

---

[20] As indicated previously, these parts, other than the case screws, are not at issue, whether "minor" or not.

does not state that this list of components of a case is exhaustive, it suggests that the HTSUS does not contemplate including the sealing and binding components of a watch, such as screws, as parts of the watch case.

The purpose of a watch case is to "house, contain and protect the parts of the movement, dial and hands." [21] Shipley Decl., ¶ 18. The case screws are made of titanium and, along with stainless steel washers, fasten case parts together. Shipley Decl., ¶ 59. The rubber or crystal sealing gaskets together with the stainless-steel sealing flanges serve the function of sealing the watch together to achieve water resistance. [22] Shipley Decl., ¶ 38. As indicated, the government does not press the argument that the sealing components must be of precious metal for obvious practical reasons. The government's reading, however, somewhat contradictorily, would require the screws holding together the components of the watch case to be made of "precious metal" even though gold, silver, and platinum may not be suited to construct a structurally sound watch. See Pl. Resp. to OA Questions, ECF No. 58 (Sept. 30, 2024). It would not be the intent of the drafters of the HTSUS to make selection among headings based on features that cannot exist.

Although at times, luxury items are less durable than their non-luxury counterparts, the government has presented no evidence to suggest that such a practice is common in the watch industry. It did present one example of screws said to be of eighteen-karat gold, sold online. Def. Resp. to OA Questions at 1, ECF No. 57 (Sept. 30, 2024). Similarly, the government provided an example of a watch with "eighteen-karat gold screws." Id. at 2. At this stage, the court does not

---

[21] This proposition is supported by the Oxford English Dictionary's definition of "watch-case" as "a hinged case or cover of an old-fashioned watch, enclosing the watch proper; now, the metal cover enclosing the works of a watch." Watch-case, Oxford English Dictionary, https://www.oed.com/dictionary/watch-case_n?tab=meaning_and_use#15020101 (last visited Sept. 12, 2024).

[22] There is no real dispute that gaskets could not be made of precious metal. Pl. Resp. to OA Questions at 3; Def. Resp. to OA Questions at 3.

know the composition of the screws. To resolve the issue of the status of screws as part of the case, the court would wish to hear evidence on what the industry considers a watch case or watch case body to be and whether precious metal screws are successfully used in watches. The court need not resolve this issue as the watch back crystal as a part of the case adequately determines the result here.

## CONCLUSION

For the foregoing reasons, the court denies Ildico's motion for summary judgment, grants the government's cross-motion for summary judgment, and holds that the subject merchandise is properly classifiable under heading 9102, HTSUS. Judgment will be entered accordingly.

  /s/Jane A. Restani
Jane A. Restani, Judge

Dated: November 1, 2024
     New York, New York